## A94A1027. JAFARI et al. v. SIMPSON ORGANIZATION.
### (448 SE2d 493)

RUFFIN, Judge.

The appellee sued the appellants, Jeffery Jafari and the Prad Group, Inc., for non-payment of rent. The appellants filed a counter-claim for the alleged conversion of personal property which was left on leased premises after termination of a lease. After a bench trial, the trial court entered judgment in favor of the appellee on both claims, and this appeal followed.

The appellants leased office space in a building owned by West Peachtree Partners under a lease which stipulated a term commencing July 1, 1988 until June 30, 1991 and an initial monthly rent of $3,682.47. The lease provided that the annual rental rate would increase each January 1 in accordance with the consumer price index. The lease also gave the appellants the option of early termination on June 30, 1990, provided the appellants were not in default under the terms and conditions of the lease; the appellants gave 90 days advance notice; and the appellants paid the unamortized portion of the buildout cost.

On January 30, 1990, the appellants notified the property manager for West Peachtree Partners of their intention to vacate the premises by June 30, 1990. The property manager responded on April 18, 1990, and informed the appellants that they were in default under the terms and conditions of the lease agreement because they failed to pay their rent for March and April and thus, forfeited their option to cancel the lease. The response also appears to confirm a prior telephone conversation in which the appellants indicated to the property manager that they no longer wanted to terminate the lease but instead were considering expanding their office space.

At trial, Jafari admitted that the appellants were in arrears on their lease payments at the time of the property manager's letter, but he testified that they caught up on the rent and paid the unamortized cost under the lease such that by June 30, 1990, the lease was terminated. He also maintained that the appellants reached a subsequent agreement with the property manager that they would remain on the premises after June 30, 1990, on a month-to-month basis and pay the reduced rent of $3,000 per month. Jafari testified further that in February 1990, he learned of the appellee's plans to purchase the premises and that in the ensuing months, he reached an agreement with one of the appellee's partners, Nick Telesca, that the rent would be reduced further to $2,500 per month upon the appellee's purchase of the property. Nick Telesca did not testify at trial; however, two other partners testified that neither the appellee nor West Peachtree Partners agreed to reduce the rent. No written evidence of such an agreement was introduced at trial.

In November 1990, the appellee purchased the building. In connection with the purchase, the appellee sent each tenant a copy of its lease and an estoppel certificate and requested that the tenants verify the material terms. The appellants' estoppel certificate indicated a term commencing June 1, 1988 until June 30, 1991 and a monthly rental rate of $4,017.50, as of October 1990. Jafari made a "correction" in the margin of the certificate that the rent was $3,000 per month, and he attached a letter in which he explained the current status of the lease. In pertinent part, the letter indicated that the lease ended on June 30, 1990, and that the California office agreed to reduce the rent to $3,000, which the appellants were currently paying, having been denied their request of a reduction to $2,500 per month.

The record of the appellants' account with the appellee shows that as of December 1990, the appellee's first full month of ownership, the appellants were billed the monthly rental rate of $4,017.50, in accordance with the lease, and that the appellee continued to bill the appellants in full until the appellants vacated the premises, at which time the rent had increased to $4,262.57 per month. The appellants' payment history dating back to December 1990 reveals a pattern of late payments, sometimes as late as two or three months, partial payments and the tender of lump sums after months of arrearages. Total payments per month never exceeded $2,500. Jafari testified that based on the agreement reached with Nick Telesca, the appellants' rent was $2,500 per month. However, monthly invoices billed the full payment due under the lease and displayed the cumulative total past due.

Correspondence between the parties from March 4, 1991 until March 4, 1992, demonstrates the appellee's efforts to collect past due rent, its willingness to accept less rent to satisfy arrearages and the parties' continuing efforts to agree on a new lease with a reduced rent. Mark Taylor, one of the appellee's partners, testified that the appellee was willing to allow the appellants to remain on the premises after expiration of the lease on June 30, 1991, and was willing to reduce the rent but only in exchange for a three-year extension of the lease. Taylor's telephone log of his conversations with Jafari from June 14, 1991 until January 29, 1992, shows numerous discussions regarding the appellants' missed payments, the appellee's attempts to collect full payment and the parties' continuing efforts to agree on a new lease.

By March 4, 1992, the parties could not agree on a rental amount and lease extension. The appellants notified the appellee that they intended to vacate the premises by April 1, 1992. They also tendered a "final" check for past due February and March rent totalling $5,000. Upon receipt of the appellants' notice of termination, the appellee demanded the payment of $20,650.84, in satisfaction of all of the appellants' outstanding claims, by March 23, 1992. The appellee

advised the appellants that the contract ran from June 1, 1988 until June 30, 1991; that the rent as of January 1, 1991, was $4,262.57; that from the appellee's purchase of the building in November 1990 until May 1991, the appellants' account was seriously delinquent; that on May 1, 1991, the appellee accepted a lump sum as a compromise of all outstanding claims at that time; that, nonetheless, the delinquency continued every month; that under paragraph 16 of the lease, a lessee who remains on the premises after expiration of the term of the lease, without any express agreement between the parties, is a tenant at will at a rental rate equal to one-and-one-half times the rental rate in effect at the end of the lease; and that under other lease provisions, the appellee was also entitled to collect attorney fees and a five percent charge on the outstanding balance. When the appellants failed to make payment by April 1, 1992, the appellee changed the locks on the appellants' office, thus preventing the appellants from moving their personal property from the premises. The appellee then filed the instant action and the counterclaim followed. The court entered a judgment for the appellee in the amount of $20,650.84 plus interest and attorney fees.

At trial, the appellee introduced evidence that despite payment of rent in the amount of $44,000, the appellants' total delinquency under the lease (including rent at the hold-over rate from July 1991) from November 1990 until April 1992 was $52,119.61. However, Mark Taylor testified that they opted not to enforce the hold-over provision or the 1992 consumer price index increase to which they were entitled and that the $20,650.84 figure represented the difference between the lease obligation ($42,625.70) and the sum already paid by the appellants ($21,974.86) from June 1, 1991 until March 1, 1992.

1. In their first enumeration of error, the appellants contend the evidence did not support the judgment because the appellee failed to refute the termination of the original lease and the establishment of a month-to-month tenancy. The appellants also contend the specific amount awarded by the trial court was not supported by the evidence. We disagree.

"In bench trials, the trial judge sits as the trier of fact and his findings are analogous to the verdict of a jury and should not be disturbed if there is any evidence to support them. [Cit.] Further, under OCGA § 9-11-52 (a) the findings of the trial court in these cases 'shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.' As the clearly erroneous test has the same effect as the any evidence rule, we will not disturb the findings of fact in this case if there is any evidence to sustain them. [Cit.]" *Taylor & Rozier v. Anderson*, 211 Ga. App. 897, 898 (440 SE2d 767) (1994).

The evidence demonstrates, notwithstanding the negotiations for

a new lease at a lower rental rate, that throughout the appellants' tenancy, the parties were governed by the original lease; that the appellee continually asserted its right, under the lease, to full payment of rent; and that the appellants' payment and the appellee's receipt of less than the total amount of rent due did not constitute a mutual departure from the lease or an accord and satisfaction. See *Minor v. C & S Nat. Bank*, 177 Ga. App. 115 (338 SE2d 466) (1985). Compare *Mobley v. Fulton Roofing Co.*, 173 Ga. App. 563 (1) (327 SE2d 540) (1985). Moreover, there was no documentary evidence of termination of the lease during West Peachtree Partners' ownership of the building nor was there any such evidence of agreements with West Peachtree Partners or the appellee to a month-to-month tenancy commencing in 1990 at a lower rental rate. The only evidence which arguably supports the termination of the lease and the establishment of a month-to-month tenancy in 1990 is Jeffery Jafari's in-court testimony which the trial court, as trier of fact, was entitled to disbelieve.

The record also supports the amount awarded the appellee by the trial court based on the appellants' default due to their failure to pay the full amount of rent due and owing each month after expiration of the lease in 1991.

2. The appellants also enumerate as error the admission of a series of letters written during the appellants' tenancy under West Peachtree Partners' ownership by West Peachtree Partners' property manager notifying the appellants they were in default of the lease agreement due to untimely payment of rent and demanding full and immediate payment in accordance with the lease. The appellants contend the letters were improperly admitted as business records without proper foundation. Assuming a proper foundation was not presented for introduction of the letters, such error was harmless. Since the April 18, 1990 demand letter from the property manager, which was admitted without objection, demonstrated that the appellants were in default in April 1990, and there was extensive evidence of the appellants' defaults after the appellee assumed ownership of the building, the letters were merely cumulative evidence of the likelihood that the lease was not terminated in June 1990 due to the appellants' practice of defaulting on the lease. See *Ansley v. State*, 198 Ga. App. 452 (402 SE2d 73) (1991). Furthermore, "it is presumed in a nonjury trial that in his consideration of evidence the judge will sift the wheat from the chaff and select only the legal evidence. [Cit.]" *Dawley v. Butts County &c. Svcs.*, 148 Ga. App. 815 (2) (253 SE2d 235) (1979).

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 7, 1994.

*Glaze, Glaze & Fincher, Thomas M. Conway*, for appellants.

*Schwall & Schwall, Craig L. Schwall, Thomas E. Austin, Jr.,* for appellee.